IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE ) <br> UNITED STATES OF AMERICA FOR AN ORDER ) <br> AUTHORIZING A DOCUMENTARY SEARCH ) <br> WARRANT FOR THE RESIDENCE LOCATED AT: ) <br> ) <br> **7631 KINSTON STREET** ) <br> **NORTH CHARLESTON, SC 29418** ) | MISC NO.  2:21-cr-767 |

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, BRIAN ROBINSON, a Special Agent with Homeland Security Investigations (HSI), being duly sworn, declare and state:

1. I am an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations of and to make arrests for offenses enumerated in 18 U.S.C. § 2516. I have been a Special Agent with U.S. Customs/HSI since February 2003 and am currently assigned to the Drug Enforcement Administration (DEA) Task Force in Charleston, South Carolina. Prior to my employment with HSI, I was employed as a law enforcement officer in Cobb County, Georgia, for over three years and was assigned to the Marietta/Cobb/Smyrna Narcotics Task Force (MCS Narcotics) for more than two years. While with MCS Narcotics, I conducted and/or participated in numerous drug and money laundering related investigations. Since being assigned to the HSI Charleston office, I have primarily conducted investigations involving the illegal importation and distribution of drugs, and weapon and money laundering violations and, among other things, have conducted or participated in surveillance, the execution of search warrants, debriefings of informants, reviews of recorded conversations, and have conducted or participated in investigations that included the interception of electronic communications. I have written and

1



submitted to the Court numerous affidavits in support of arrest warrants, search warrants, pen registers, Title-III wire intercepts, and electronic tracking device (ETD) warrants. I have served as the lead case agent during numerous wiretap investigations. I have received additional training in these investigations from the DEA, Internal Revenue Service (IRS), and other federal and state government agencies. Through my training, education and experience, I have become familiar with the manner in which illegal drugs are transported, stored, and distributed, the methods of payment for such drugs, the laundering of drug proceeds, and the terminology and coded language used by drug traffickers.

2. While involved in investigations involving drug trafficking and criminal enterprises, I have communicated extensively with other federal, state, and local law enforcement personnel who specialize or have expertise in this area. Based on my training, experience, and participation in drug trafficking investigations, I know that:

a) Drug traffickers must maintain at ready access large amounts of cash in order to maintain and finance their ongoing drug business;

b) Because drug trafficking on the scale revealed in this investigation is frequently a continuing activity which spans many years, because the traffickers inventory of controlled substances fluctuates depending on availability and demand, and because drug traffickers commonly front drugs, or provide them on consignment to their customers, the traffickers must maintain books, receipts, notes, ledgers or some other type of record reflecting such transactions. Drug traffickers and members of criminal enterprises must keep their records in some secure, yet readily accessible, place where they can be used and maintained, such as in homes, buildings on their property, offices, places of business, automobiles, safes or safe deposit boxes. Drug traffickers and members of criminal enterprises



must keep these records of their illegal activities beyond the time during which controlled substances are actually in their possession, so that they can maintain contact with their criminal associates for future drug transactions, and so that they can keep records of prior transactions for which they might be owed or owe inventory or money;

c) Drug traffickers and members of criminal enterprises commonly hide controlled substances, drug proceeds, and records of their drug transactions in secure locations, as well as in offices or places of business, automobiles, garages, or storage buildings and other buildings on their property. Similarly, the traffickers and members of criminal enterprises have ready access to these items, and attempt to conceal them from law enforcement agencies;

d) Drug traffickers and members of criminal enterprises often conceal controlled substances, currency, financial instruments, documents relating to financial transactions, precious metals, jewelry, other items of value, and proceeds of drug transactions, all of which constitutes evidence of drug trafficking activities. Additionally, such items constitute evidence of transactions establishing the generation, transfer, concealment, and expenditure of large sums of money made from trafficking in controlled substances. Drug traffickers maintain these items in secure, yet convenient locations, such as their homes, buildings on their property, offices, and places of business, garages, storage buildings, automobiles, and safe deposit boxes;

e) Drug traffickers and members of criminal enterprises commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and telephone numbers for their drug trafficking and money laundering associates.

3



These items are sometimes in code;

f) Drug traffickers and members of criminal enterprises frequently have photographs and video of themselves, their associates, their property, firearms, and controlled substances, which are usually maintained in their homes, buildings on their property, offices and place of business. Such photographs and videos constitute evidence of their drug trafficking and criminal activities, establishing their connections with items of property with each other, and with drugs and firearms;

g) Drug traffickers and members of criminal enterprises involved in importation or transportation of controlled substances from source cities generally possess documentation, such as telephone records, correspondence, shipping receipts, wire transfers, airline ticket receipts, and the like, which pertain to the acquisition, transportation, shipment, or receipt of, or payment for, controlled substances, which is evidence of the traffickers' participation in the illegal drug scheme;

h) Drug traffickers and members of criminal enterprises often maintain some record of the movement of money, whether it is accomplished by wire or interbank transfer or by a person acting as a courier. Such records, even though they may be in code, are evidence of the traffickers and/or the criminal enterprise member's illegal activities;

i) Drug traffickers and members of criminal enterprises often use false or fictitious names or corporations or other business entities to launder their drug proceeds and to send shipments of cash or controlled substances through the mail or other delivery services. Banks, both domestic and abroad, are sometimes

4



utilized by traffickers or their agents though which proceeds from their illegal activities are laundered. Funds are frequently transferred between banks and various accounts to conceal their sources and origins. It is also common to obtain bearer or other negotiable instruments through foreign banks to avoid the necessity of filing currency transaction reports, in this manner concealing the fact of the transaction and the true ownership of the funds. Documents or records of any kind reflecting any connection with any such entity or transaction constitute evidence of the traffickers participation in the illegal scheme;

j) Drug traffickers and members of criminal enterprises frequently utilize a continuing pattern of activities to launder and conceal drug-generated proceeds and assets, which lasts over a period of years. Drug traffickers use these patterns or schemes to create the appearance of legitimate income so that they can eventually convert the proceeds or assets to themselves or to a nominee under their control. In this way, the traffickers and members of criminal enterprises can enjoy and use their properties while attempting to conceal their illegal activities, which generated the proceeds or assets;

k) Courts have recognized that unexplained wealth is probative evidence of crimes motivated by greed, which includes trafficking in controlled substances and illegal schemes to conceal drug-generated proceeds;

l) Drug traffickers and members of criminal enterprises who deal in illegal controlled substances often use cellular telephones to maintain contact with and receive phone and or text messages from their customers, suppliers, and co-conspirators to further their drug distribution activity;

m) Drug traffickers and members of criminal enterprises often possess and



maintain firearms, ammunition and bulletproof vests in their homes to protect their drugs and illegal proceeds. The firearms and ammunition possessed in furtherance of drug trafficking are used in violation of Title 18, United States Code, Section 924(c) and are considered tools of the drug trade; and

n) In addition, during the course of such residential searches, I have also found items of personal property and or mail that tend to identify the person(s) in residence, occupancy, control, or ownership of the subject premises

## BASIS FOR FACTS CONTAINED IN THIS AFFIDAVIT

3. Unless otherwise noted, wherever in this affidavit I assert that a statement was made, the information was either obtained by me personally or provided by a law enforcement officer, who may have had either direct or hearsay knowledge of the statement, to whom I have spoken, or whose report(s) I have reviewed. Similarly, except where otherwise indicated, information resulting from surveillance does not always set forth my personal observations, but rather those observations provided directly or indirectly by, and/or through other special agents and task force officers of DEA or other law enforcement officers who conducted such surveillance. Because this affidavit is submitted for the limited purpose of showing probable cause, I have not set forth each and every fact learned during the course of this investigation. Facts not set forth herein are not being relied upon in reaching my conclusion that the facts provided establish probable cause.

## PURPOSE OF AFFIDAVIT

4. This Affidavit is being submitted in support of an Application by the United States of America, which seeks a search warrant for the following residence described in Attachment A:

**7631 KINSTON STREET**
**NORTH CHARLESTON, SC 29418**



## SUBJECT AND OFFENSES

5. The basis for requesting this Search Warrant relates to a criminal investigation focusing on the drug-related activities of Maurice MITCHELL, a/k/a "Frap," and others known and unknown, who are believed to be involved in a conspiracy to distribute controlled substances, in violation of Title 21, United States Code, Sections 841(a)(1) and 846. Since June 2019, the Drug Enforcement Administration (DEA) and Homeland Security Investigations (HSI) have been involved in the investigation of a drug trafficking organization (DTO) operating in the Charleston, South Carolina area. Based on investigative efforts including recorded conversations, cooperating sources (CSs), cooperating defendants (CDs), telephone toll analysis and both electronic and physical surveillance, I have learned that MITCHELL is a distributor of heroin, fentanyl, cocaine and methamphetamine in South Carolina.

6. MITCHELL's NCIC record indicates that he was convicted of Possession of Crack Cocaine with Intent to Distribute (1997), Possession of Crack Cocaine (1997), Disorderly Conduct (1999), Receiving Stolen Goods (1999), Lynching (2001), Simple Assault (2004), Resisting Arrest (2004), Possession of Drug Paraphernalia (2005), DUI (2005), Manufacture, Distribute, Possess Cocaine (2007), Threatening Life of Public Employee (2007), Possession of Cocaine (2007), Habitual Traffic Offender (2007), Giving False Information (2009), Failure to Appear (2009), Grand Larceny (2012) and Driving Under Suspension (2013).

## FACTS AND CIRCUMSTANCES

7. On January 31, 2020, a North Charleston Police Confidential Informant (CI-1)[1] conducted a controlled purchase of heroin from Michael Brown, a/k/a "Fat Head," a relative of MITCHELL's at 1911 Hackemann Ave in North Charleston, SC. CI-1 described the location as a

---

[1] CI-1 has an extensive criminal history and cooperated for judicial consideration. The cooperation of CI-1 has led to multiple drug related arrests and seizures.

7



residence that MITCHELL uses to distribute drugs. On February 7, 2021, the North Charleston Police Department conducted a search warrant at 1911 Hackemann Ave and seized 14.4 grams of fentanyl and arrested Michael Brown.

8. Beginning in early 2020, this investigation has resulted in the seizure of multiple kilograms of fentanyl, cocaine and methamphetamine smuggled from Mexico and sent to South Carolina. One of the co-conspirators receiving and distributing the drugs was confronted by the DEA and immediately agreed to cooperate. The Cooperating Defendant (CD-1)[2] provided that the kilograms of fentanyl that had been smuggled to South Carolina were distributed through 2 different subjects, one being MITCHELL. On November 14, 2020, CD-1 provided that MITCHELL had contacted CD-1 through a co-conspirator and requested to purchase additional kilograms of fentanyl. At the direction of DEA, CD-1 arranged to sell 2 kilograms of fentanyl to MITCHELL through a series of recorded telephone calls with the co-conspirator. On November 17, 2020, surveillance observed a red Buick SUV bearing South Carolina license plate "PEQ675" arrive at the Food Lion parking lot located on Red Bank Road in Goose Creek, SC. A query of the South Carolina Department of Motor Vehicles revealed "PEQ675" is assigned to a 2015 Buick Encore registered to Paulette Naila H Gregory at 417 Gull Lane in Goose Creek, SC. The Buick SUV was operated by Paulette Gregory with MITCHELL in the front passenger seat. Surveillance observed the Buick SUV pull next to a black Ford F350 dually bearing South Carolina temporary registration "IT1203P." A query of the South Carolina Department of Motor Vehicles revealed "IT1203P" is assigned to a 2017 Ford F350 registered to Patricia Ann Mitchell at 2000 Hampton

---

2 CD-1 has an extensive criminal history and cooperated for judicial consideration. The cooperation of CD-1 has led to multiple drug related arrests and seizures.



Ave Apt 4308 in North Charleston, SC.3 Surveillance observed MITCHELL exit the Buick SUV with a black bag and place the bag in the front seat of the Ford F350. The 2 vehicles then travelled to a pre-determined location and where CD-1 had directed. CD-1 arrived and the driver of the Ford F350 provided CD-1 with the black bag which had been placed in the truck by MITCHELL. The black bag contained $97,845 in US currency as payment for 2 kilograms of fentanyl, CD-1 then provided the driver of the Ford F350 with 2 kilograms of "sham" fentanyl. After the exchange, CD-1 departed the area and the driver of the Ford F350 provided MITCHELL with the 2 kilograms of "sham" fentanyl. The Buick SUV and the Ford F350 then departed the area. Law enforcement conducted lawful traffic stops of both the Buick SUV and the Ford F350, which began to travel in different directions once the meeting concluded. Law Enforcement recovered the 2 kilograms of "sham" fentanyl from the floorboard of the Buick SUV, directly under where MITCHELL was sitting. Law Enforcement also seized 3 bags containing a combined approximate weight of 51.3 grams of cocaine from MITCHELL. MITCHELL was arrested by the Berkeley County Sheriff's Office.

9. In June 2021, CD-1 provided information through a proffer agreement with the United States Attorney's Office in Charleston, SC. CD-1 has known the co-defendant that was driving MITCHELL's Ford F350 since approximately 2011. Beginning in the summer of 2020, CD-1 began purchasing 1 to 2 kilograms of cocaine from the co-defendant, but was approached by the co-defendant to provide fentanyl to the co-defendants partner, MITCHELL. CD-1 preferred to deal with the co-defendant because the CD-1 did not trust MITCHELL. CD-1 described that the co-defendant (driver of MITCHELL's Ford F350) always brokered the deals between CD-1 and

---

3 Investigators believe Patricia Ann Mitchell to be a relative of MITCHELL and know that both MITCHELL and Patricia Ann Mitchell provided the address of 2000 Hampton Ave in North Charleston, SC to the South Carolina Department of Motor Vehicles for their driver license.

MITCHELL. CD-1 described that the first deal occurred in the summer of 2020, and CD-1 delivered 1 kilogram of fentanyl to the Food Lion located at Dorchester Road and Cross County road in North Charleston near the Forest Hills community. The co-defendant departed the parking lot to deliver the fentanyl to MITCHELL and returned a short time later with $50,000 in US currency. CD-1 described providing MITCHELL with 6 kilograms of fentanyl through the co-defendant before the reverse operation leading to MITCHELL's arrest in November 2020.

10. In March 2021, a Confidential Informant (CI-2)4 provided information to the North Charleston Police Department about the distribution of heroin by MITCHELL. CI-2 explained that MITCHELL supplies drugs to subjects at "trap houses" to distribute.5 CI-2 described one of the "trap houses" used by MITCHELL as the residence located at 1911 Hackemann Ave in North Charleston, SC. CI-2 directed the North Charleston Police detectives to the Forest Hills community in North Charleston to show detectives where CI-2 believes MITCHELL is residing. CI-2 pointed out an area between Kinston Street, Lowell Drive and High Maple Circle in the Forest Hills community as where MITCHELL's residence is located.

11. On March 29, 2021, North Charleston Police Department detectives utilized CI-2 to conduct a controlled purchase of heroin from MITCHELL. MITCHELL delivered the heroin (which later tested positive for fentanyl) to CI-2 driving a black Ford F-150 bearing South Carolina license plate "SZQ997." A query of the South Carolina Department of Motor Vehicles revealed "SZQ997" is assigned to a 2016 Ford F150 registered to Paulette Naila H Gregory at 417 Gull Lane in Goose Creek, SC. Following the purchase, detectives attempted to conduct surveillance of

---

4 CI-2 has an extensive criminal history and cooperated for judicial consideration. The cooperation of CI-2 has led to drug related arrests and seizures.

5 A "trap house" is a location where drugs are kept and distributed from. Drug suppliers provide distributors at the "trap house" with drugs to sell and the purchasers frequent the "trap house" to buy small quantities of drugs.

10

MITCHELL but lost MITCHELL after he turned onto Cross County Road from Ashley Phosphate Road in North Charleston, SC. At that time, MITCHELL was travelling in the direction of the Forest Hills community located near Cross County Road and Dorchester Road in North Charleston, SC.

12. On April 6, 2021, North Charleston Police Department officers conducting patrols of hotels on North Arco Lane in North Charleston, SC after receiving complaints of drug distribution at the hotels. Officers observed an unoccupied Ford F150 backed into a parking space with the engine still running. A short time later, officers observed the Ford F150 depart the hotel parking lot at a high rate of speed and disregard a posted stop sign. Officers positioned themselves behind the Ford F150 and observed the truck bearing license plate "SZQ997" was occupied only by the driver of the truck. This was the same truck that MITCHELL used to deliver fentanyl to CI-2 on March 29, 2021 described above. Officers initiated a lawful traffic stop of the Ford F150, however the truck did not stop and fled at a high rate of speed. Officers maintained a pursuit of the truck onto 526 where officers observed the driver throw several plastic bags from within the truck near the Westmoreland Bridge and again onto 526 just before the Leeds Avenue exit. Officers terminated the pursuit and assisting officers responded to the area where the driver was observed discarding items while trying to flee. Assisting officers recovered plastic bags that contained approximately 30 grams of crack cocaine.

13. On April 7, 2021, North Charleston Police Department detectives utilized CI-2 to conduct a controlled purchase of heroin from MITCHELL. MITCHELL directed CI-2 to pick up the heroin from 1911 Hackemann Avenue in North Charleston, SC. CI-2 conducted the purchase from Michael Brown, the same subject arrested during the February 2020 search warrant at 1911 Hackemann Avenue described above. The heroin CI-2 purchased tested positive for fentanyl.

14. On June 15, 2021, a Federal Grand Jury sitting at United States District Court in the District of South Carolina retuned a True Bill indictment charging MITCHELL for violations of Title 21 USC 841 and 846 related to the November 2020 reverse operation.

15. On July 20, 2021, North Charleston Police Department detectives utilized a Confidential Informant (CI-3) 6 to conduct a controlled purchase of crack cocaine from MITCHELL. MITCHELL arranged to meet CI-3 at the intersection of Ashley Phosphate Road and Cross County Road in North Charleston, SC. This area was again not far from the Forest Hills community located near Cross County Road and Dorchester Road in North Charleston, SC.

16. On September 20, 2021, Charleston County Sheriff's Office responded to a residence in Folly Beach, SC after reports of a fentanyl overdose of a female and her 1 year old child. Through their investigation, Charleston County Sheriff's Office detectives identified the subject that distributed the fentanyl to the female. On September 21, 2021, Charleston County Sheriff's Office detectives located the supplier who cooperated with the investigation. The supplier admitted to providing the female with the fentanyl which the supplier described was purchased through MITCHELL. The supplier described contacting MITCHELL to purchase fentanyl, and MITCHELL directed the supplier to go to 1911 Hackemann Ave in North Charleston, SC. The supplier purchased fentanyl from a subject at the residence and provided the fentanyl to the female who overdosed along with her 1 year old child after ingesting the fentanyl. When detectives approached the supplier on the evening of September 21, 2021, he was also in possession of additional fentanyl that the supplier admitted was purchased earlier in the day through MITCHELL. MITCHELL again directed the supplier to travel to 1911 Hackemann Ave where the supper acquired the fentanyl detectives seized. A consent search of the supplier's cellular

---

6 CI-3 has a criminal history and began cooperating for judicial consideration, however CI-3 is now a paid informant. The cooperation of CI-3 has led to multiple arrests and seizures.

telephone identified multiple text messages between the supplier and a telephone number used by MITCHELL to arrange for the purchase of drugs, some of which occurred at the InTown Suites located on North Arco Lane in North Charleston, SC. One specific text message conversation that occurred on September 19, 2021, MITCHELL directed the supplier to 1911 Hackemann Ave in North Charleston, SC. The supplier admitted to purchasing heroin, fentanyl and methamphetamine from MITCHELL for the past 3 years. The supplier agreed to conduct a controlled purchase of methamphetamine from MITCHELL.

17. On the evening of September 21, 2021, the supplier, hereinafter referred to as a Cooperating Defendant (CD-2)[7], conducted a recorded telephone call to MITCHELL. The telephone number that CD-2 contacted MITCHELL at was the same telephone number that the North Charleston Police CI's contacted MITCHELL at to arrange for the purchases of heroin, fentanyl and cocaine from MITCHELL. MITCHELL directed CD-2 to travel to the InTown Suites located on North Arco Lane in North Charleston. MITCHELL arrived at the hotel in the black Ford F350 dually bearing South Carolina temporary registration "IT1203P" that was used in the November 17, 2020 reverse operation described above. MITCHELL backed the Ford F350 into a parking space at the hotel and left the truck running while he walked to the hotel and sold CD-2 approximately 29 grams of methamphetamine for $300 US currency. This behavior was consistent with what North Charleston Police officers observed on April 6, 2021 in the same area as described above. After the transaction, MITCHELL departed the hotel in the F350 and surveillance was maintained as he travelled toward the Forest Hills community. MITCHELL conducted a series of "heat checks" before arriving at **7631 Kinston Street in North Charleston, SC** located in the Forest Hills community. MITCHELL backed the Ford F350 into the driveway and parked the truck

---

[7] CD-2 has an extensive criminal history and cooperated for judicial consideration.

next to a white Toyota Scion bearing South Carolina license plate "P820650" before entering the residence. A query of the South Carolina Department of Motor Vehicles revealed "P820650" is assigned to a 2013 Toyota Scion registered to Paulette Naila H Gregory at 417 Gull Lane in Goose Creek, SC. Based on surveillance, MITCHELL remained at **7631 Kinston Street in North Charleston, SC** through the night.

18. On the morning of September 22, 2021, surveillance of **7631 Kinston Street in North Charleston, SC** identified that both Gregory's vehicle and MITCHELL's Ford F350 had departed **7631 Kinston Street in North Charleston, SC**.

19. On the evening of September 22, 2021 surveillance observed MITCHELL in his Ford F350 at the InTown Suites located on North Arco Lane in North Charleston, SC. Later that night, surveillance observed MITCHELL's Ford F350 parked in the driveway at **7631 Kinston Street in North Charleston, SC**. MITCHELL's Ford F350 remained parked at **7631 Kinston Street in North Charleston, SC** overnight and through the morning of September 23, 2021. Surveillance of **7631 Kinston Street in North Charleston, SC** was maintained as MITCHELL's Ford F350 was the only vehicle parked in the driveway. Around lunchtime on September 23, 2021, surveillance observed and photographed MITCHELL as he exited **7631 Kinston Street in North Charleston, SC** with a dog. MITCHELL walked the dog before returning with the dog to **7631 Kinston Street in North Charleston, SC**. Later in the early afternoon, MITCHELL's Ford F350 departed **7631 Kinston Street in North Charleston, SC**.

20. On September 22, 2021, a subpoena was issued to Dominion Energy requesting account information for **7631 Kinston Street in North Charleston, SC**. Dominion Energy responded on September 22, 2021 and provided that the service for **7631 Kinston Street in North Charleston, SC** has been provided to American Homes 4 Rent since September 4, 2015. Based on this response and the above, I believe that **7631 Kinston Street in North Charleston, SC** is a

rental property being occupied by MITCHELL.

## AUTHORIZATION REQUEST

21. Based on the foregoing, I request that the Court issue the proposed search warrant for the current residence including the automobiles and buildings located at **7631 KINSTON STREET, NORTH CHARLESTON, SC 29418** described in Attachment A for the items listed in Attachment B.

## CONCLUSION

22. I believe there is probable cause to establish that Maurice MITCHELL a/k/a "Frap" is a drug trafficker and maintains residency at the aforementioned address. I know that drug traffickers keep drugs, drug scales, and drug proceeds at their respective residences/businesses along with the items described in Attachment B and actively use their residences/businesses as a place to conduct drug transactions or to store drugs and or firearms. Based on this information, I have reason to believe that Maurice MITCHELL a/k/a "Frap" has used, and continues to use, the above listed address to commit violations of federal laws, specifically the unlawful possession of, possession with intent to distribute, the distribution of controlled substances, and conspiracies and attempts to do the same, in violation of Title 21, United States Code, Section 841(a)(1) and Title 21 United States Code 846 and money laundering, in violation of Title 18, United States Code, Section 1956. I believe those items listed in Attachment B, to include drug ledgers, cellular phones, phone records, and records pertaining to this conspiracy, and/or U.S. currency will be located at **7631 KINSTON STREET, NORTH CHARLESTON, SC 29418** and described in Attachment A.



AUSA Jamie Schoen has reviewed this affidavit.

Respectfully submitted,

Brian Robinson
Special Agent

Sworn to me via telephone OR
other reliable electronic means
and signed by me pursuant to
Fed. R. Crim. P. 4.1 AND 4(d) OR 41(d)(3),
AS APPLICABLE

Subscribed and sworn to before me on September 23, 2021

MOLLY CHERRY
UNITED STATES MAGISTRATE JUDGE